IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| Tax-Free Fixed Income Fund for Puerto Rico Residents, Inc., et al., <br><br> Plaintiffs, <br><br> v. <br><br> Ocean Capital LLC, et al., <br><br> Defendants. <br><br><hr><br> Ocean Capital LLC, <br><br> Counterclaim Plaintiff, <br><br> v. <br><br> Puerto Rico Residents Tax-Free Fund, Inc., Puerto Rico Residents Tax-Free Fund VI, Inc., and Tax-Free Fund for Puerto Rico Residents, Inc., <br><br> Affected Funds. | **Civil No. 22-1101(GMM)** |

**OPINION AND ORDER**

Pending before the Court are *Ocean Capital LLC's Motion to Award Attorneys' Fees and Costs* and the *Amendment to Motion to Award Attorneys' Fees and Costs*. (together, "*Motion for Attorneys' Fees*") (Docket Nos. 252, 263). For the reasons explained herein, Ocean Capital LLC's ("Ocean Capital") *Motion for Attorneys' Fees* is **DENIED**.

I.  **FACTUAL AND PROCEDURAL BACKGROUND**

In February 2022, Plaintiffs[1], representing nine closed-end mutual funds (collectively, "the Funds"), sued Ocean Capital LLC and several individuals and firms[2] (together, "Defendants") for allegedly committing securities violations. *See* (Docket No. 1). The Funds alleged that Defendants misled their shareholders by failing to make complete and accurate disclosures, violating Sections 13(d), 14(a), and 20(a) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78a *et seq.*, and other applicable rules of the Securities and Exchange Commission ("SEC"). *See* Tax-Free Fixed Income Fund for P.R. Residents, Inc. v. Ocean Cap. LLC, 137 F.4th 6, 11 (1st Cir. 2025); (Docket No. 246). In its core, this case relates to "a dispute over the sufficiency and accuracy of Defendants['] disclosures and proxy materials. Ocean Cap., LLC, 137 F.4th at 12.

In summer 2021, Ocean Capital began to nominate new directors to the Funds' boards to be elected by stockholders. (Docket No.

---

[1] Tax-Free Fixed Income Fund for Puerto Rico Residents, Inc. ("Fund I"); Tax-Free Fixed Income Fund II for Puerto Rico Residents, Inc. ("Fund II"); Tax-Free Fixed Income Fund III for Puerto Rico Residents, Inc. ("Fund III"); Tax-Free Fixed Income Fund IV for Puerto Rico Residents, Inc. ("Fund IV"); Tax-Free Fixed Income Fund V for Puerto Rico Residents, Inc. ("Fund V"); Puerto Rico Residents Tax-Free Fund, Inc. ("PRRTFF I"); Puerto Rico Residents Tax-Free Fund IV, Inc. ("PRRTFF IV"); Puerto Rico Residents Tax-Free Fund VI, Inc. ("PRRTFF VI"); and Tax-Free Fund for Puerto Rico Residents ("TFF I").
[2] Ocean Capital; William H. Hawk; José R. Izquierdo II; Brent D. Rosenthal; Roxana Cruz-Rivera; Ethan Danial; Mojdeh L. Khaghan; PRCE Management LLC; Benjamin T. Eiler; Vasileios A. Sfyris; Francisco Gonzalez; Gustavo Nevarez Torres; Alejandro Acosta Rivera; Honne II, LP; Meir Hurwitz; Mario J. Montalvo; Jose M. Perez-Gutierrez; RAD Investments, LLC; Sanzam Investments LLC; Juan E. Soto Alvarado; Sandra Calderon; The Estate of Jose Hidalgo; and Avraham Zeines.

Civil No. 22-1101 (GMM)
Page - 3 -

252 at 8). From there, stockholders elected numerous Ocean Capital nominees and passed Ocean Capital proposals. (Id. at 8-9). Stockholders overwhelmingly favored these proposals, generally by margins larger than the director votes. (Id. at 10). However, the elected directors were not sat, and the proposals were not recognized. (Id. at 10).

In the midst of this, the Funds filed their *Complaint* on February 28, 2022, subsequently filing the *First Amended Complaint for Violations of the Federal Securities Laws* on January 5, 2023. (Docket Nos. 1, 111). At this point, the Funds refused to acknowledge these elections, due to this instant case. (Docket No. 252 at 6). Consequently, Ocean Capital filed *Ocean Capital LLC's Answer and Counterclaims to Plaintiffs' First Amended Complaint* and asserted claims under Article 7.15 of the Puerto Rico General Corporations Law, 14 P.R. Laws Ann. § 3655 ("Section 3655"), against PRRTFF I and PRRTFF VI ("counterclaims"). (Docket No. 121). Ocean Capital also (1) moved to dismiss the Funds' claims (and later for judgment on the pleadings) (Docket Nos. 122-24), and (2) sought injunctive relief to require the Funds to seat the elected directors immediately. (Docket No. 169). These motions were referred to U.S. Magistrate Judge Giselle López-Soler ("Magistrate Judge López-Soler"). *See* (Docket Nos. 170, 205).

On August 10, 2023, Magistrate Judge López-Soler issued a *Report and Recommendation* proposing that Defendants' motions for

Civil No. 22-1101 (GMM)
Page – 4 –

judgment on the pleadings and to dismiss be granted. (Docket No. 187). On September 8, 2023, the Court adopted the *Report and Recommendation* in its entirety. (Docket No. 195). The Funds then moved for a stay of the proceedings on the counterclaims on September 22, 2023, (Docket No. 202), which was also referred to Magistrate Judge López-Soler. (Docket No. 205). After adopting in part Magistrate Judge López-Soler's *Report and Recommendation* at Docket No. 218, the Court denied the Funds' request to stay the proceedings and granted the Defendants' requested relief on their counterclaims by issuing an injunction ordering the Funds to seat the victorious nominees for the Board of Directors of PRRTFF I, PRRTFF VI, and TFF I. (Docket No. 236). Judgment was issued on July 12, 2024. (Docket No. 238).

Thereafter, the Funds continued to refuse to seat the Ocean Capital nominees and sought a stay of this Court's judgment pending their appeal. (Docket No. 252 at 12). The First Circuit granted an administrative stay on July 17, 2024. (Id.). On May 12, 2025, the First Circuit issued a decision affirming both the dismissal of the Funds' claims and the injunction ordering the Funds to seat the Defendants' nominees as members of the board of directors of those funds. Ocean Cap. LLC, 137 F.4th at 24; (Docket No. 246). The Funds then appointed the Ocean Capital nominees. (Docket No. 252 at 12-13).

On July 8, 2025, Ocean Capital filed *Ocean Capital LLC's Motion to Award Attorneys' Fees and Costs* ("*Motion*"), seeking $5,790,575.00 under the corporate benefit doctrine. (Id.). According to Ocean Capital, "[w]ithout Ocean Capital's efforts over the last 39 months to require the Funds to honor the votes of their stockholders, the stockholders' chosen directors would not have been seated, and the multiple proposals that the Funds' stockholders endorsed and adopted would not have been implemented." (Id. at 7). Ocean Capital alleges that Plaintiffs cited the "mere pendency" of their suit before this Court to unilaterally refuse to honor the election results and this forced them to engage in a litigation for three years and a half that required the filing of numerous motions and briefings. (Id. at 10-11).

In consequence, Ocean Capital argues that, under the corporate benefit doctrine, they are entitled to attorneys' fees and costs because the litigation vindicated the stockholders' voting rights. (Id. at 13). Despite being unable to locate a Puerto Rico case on the doctrine, Ocean Capital asserts that this Court can adopt this doctrine since Puerto Rico often "looks to Delaware law for guidance" because the "Puerto Rico law of Corporations is modeled after the Delaware Law of Corporations" (Id.) (*citing* Rishell v. Med. Card Sys., Inc., 982 F. Supp. 2d 142, 150 (D.P.R. 2013).

Using Delaware's test for the doctrine, Ocean Capital argues that their lawsuit conferred substantial benefits to the Funds' stockholders, since the ability to vote for the directors the shareholder wants to oversee is a fundamental governance right. (Id. at 13-14). According to them, this litigation achieved major benefits for stockholders including that it "forced the Funds and their incumbent directors to honor the results of at least 12 different stockholder elections at four different Funds over more than three years — election results that the Funds refused to recognize until this Court and the First Circuit ordered them to do so." (Id. at 14). In addition, they contend that they were able to implement proposals "which reduce the quorum requirement at the Funds, and empower Fund stockholders alone to determine whether to adjourn a stockholder meetings, further vindicate[ing] the corporate franchise." (Id. at 15).

Furthermore, Ocean Capital asserts that the Section 3655 counterclaims were meritorious when filed because they prevailed in this Court and on appeal. They reiterate that "[b]ut for Ocean Capital's litigation efforts, the elected directors would not have been seated, and the stockholder proposals would not have been implemented." (Id. at 16). Similarly, Ocean Capital contends that the request for $5,790,575.00 in fees and expenses is reasonable. (Id. at 17). Ocean Capital contends that the litigation produced substantial governance benefits, including the seating of its

nominees and the implementation of stockholder-approved proposals, and asserts that the case required extensive and complex motion practice over several years. (Docket No. 252 at 18-19). Specifically, Ocean Capital posits that the case required continuous efforts and filings over the years as it concerned claims "under Sections 13(d), 14(a), and 20(a) of the Exchange Act asserted by nine separate Plaintiff Funds against 23 Defendants, as well as counterclaims for injunctive relief under Section 3655 — a rarely litigated statute under Puerto Rico law." (Id.). In support of their motion, Ocean Capital filed thirteen exhibits, including the declaration of attorney Harold D. Vicente-Colón, the declaration of attorney Michael L. Charlson, as well as annual reports and shareholder reports. See (Docket Nos. 252-1 to 13). On August 15, 2025, Ocean Capital amended the Motion to "include PRRTFF IV as a fifth benefitted Plaintiff Fund that would share in the expense incurred in connection with this litigation." (Docket No. 263 at 2).

On September 15, 2025, the Tax-Free Fixed Income Fund IV for Puerto Rico Residents, Inc. and Puerto Rico Residents Tax-Free Fund IV, Inc.'s Opposition to Ocean Capital LLC's Motion to Award Attorneys' Fees and Costs was filed. (Docket No. 265). Therein, Plaintiffs Fund IV and PRRTFF IV oppose Ocean Capital's request for attorneys' fees and posit that it fails under both Puerto Rico and Delaware law. (Id. at 8). According to two of the Funds these

Plaintiffs, Puerto Rico law - specifically Rule 44.1(d) of the Puerto Rico Rules of Civil Procedure and Puerto Rico Supreme Court precedents - squarely forecloses the availability of non-statutory fee-shifting, such as on equitable grounds, as Ocean Capital seeks. (Id. at 13). These Plaintiffs add that "[t]here is no tradition of Puerto Rico law deferring to Delaware on topics like the historical equitable power of courts. Rather, Puerto Rico courts have developed their own rules concerning a court's authority to award fees." (Id. at 15).

Furthermore, these Plaintiffs argue that, even if Delaware law were to be applied, Ocean Capital would still not be entitled to any fees. First, these Plaintiffs posit that Ocean Capital never brought any affirmative claim against Fund IV or PRRTFF IV but rather only defended itself against their securities claims. (Id. at 16-17). Second, they claim Ocean Capital cannot obtain fees under Delaware law where its proxy campaign succeeded in part by its disclaiming any intention to seek those fees. (Id. at 18). Third, these Plaintiffs contend that Ocean Capital's requested fees are unreasonable and unsubstantiated. (Id. at 19). To this extent, they argue that: (1) Ocean Capital's fee request should be denied because it seeks fees from Fund IV and PRRTFF IV regarding counterclaims even though Fund IV and PRRTFF IV were not counterclaim parties; (2) Ocean Capital failed to identify which fees were incurred defending against Fund IV's and PRRTFF IV's

claims and (3) Ocean Capital did not submit any records to justify any calculation. (Id. at 19). According to these Plaintiffs, the "requested fee amount — roughly $1.16 million from each Fund" is unreasonable, since Delaware cases, including those Ocean Capital relies on, ascribe far lesser value. (Id. at 19-20). They add that Ocean Capital's "lawyers did not take this matter on a contingency basis." (Id. at 20). Also, these Plaintiffs point out that "[w]hile Ocean Capital claims its counsel somehow incurred over 5,000 hours working on this case (without submitting any underlying records), this case was decided entirely on the pleadings without any discovery, evidentiary hearing, or a trial." (Id.).

On September 15, 2025, Plaintiffs Fund I, PRRTFF VI, and TFF I filed their *Opposition to Ocean Capital LLC's Motion to Award Attorneys' Fees and Costs (ECF No. 252 and 263)*. (Docket No. 266). Therein, they argue that Ocean Capital's request is legally unsupported, overbroad, and inconsistent with Puerto Rico's governing framework for fee awards. (Id. at 2). Specifically, they contend that Section 3655 does not contain a fee-shifting provision, and that under controlling Puerto Rico Supreme Court precedent, any award is governed exclusively by Rule 44.1(d) of the Puerto Rico Rules of Civil Procedure, which authorizes fees only upon a finding of obstinacy or frivolousness. (Id. at 6). According to them, the corporate benefit doctrine is rooted in a

fundamentally different policy framework and has never been applied within the First Circuit. (Id. at 7-8).

Moreover, Fund I, PRRTFF VI, and TFF I argue that corporate benefit doctrine cannot be reconciled with this district's lodestar approach, as they serve distinct purposes and rely on different metrics. (Id. at 8-9). In addition, they assert that Ocean Capital's fee application "consists solely of aggregate totals of hours allegedly expended by each firm and corresponding lump-sum amounts billed" and omits they necessary evidence like "contemporaneous billing records identifying the dates on which specific work was performed, sufficiently detailed descriptions of the work performed, an identification of whether the work was performed by an attorney or a paralegal, and disclosure of the hourly rates applicable to each timekeeper". (Id. at 12). To this extent, they posit that Ocean Capital's request only "provides only aggregate totals and conclusory affidavits, depriving the Court of the information necessary to determine what, if any, portion of the claimed hours could be awarded." (Id. at 14).

As to the corporate benefit doctrine, Fund I, PRRTFF VI, and TFF I contend that Ocean Capital fails to satisfy the needed requirements since: (1) "Ocean Capital has failed to establish that it conferred a cognizable corporate benefit upon the Funds, given the conclusory and self-serving nature of the benefits it identifies"; (2) "the only claim Ocean Capital advanced as

supposedly conferring a corporate benefit was its counterclaim" under Section 3655 and this counterclaim was not the direct cause of any validation of the elections; and (3) the request fails to provide "any reasonable valuation for the act of seating directors of its own choosing." (Id. at 15-16). As to the reasonableness of the requested fees under the corporate benefits doctrine, these Funds assert that, even applying the framework established in Sugarland Industries, Inc. v. Thomas, 420 A.2d 142 (Del. 1980), Ocean Capital's request fails because the record does not support any award as to the asserted benefits and the case does not involve the sort of novel legal issues or intricate factual development that would justify a substantial fee award. (Id. at 16-18).

On October 15, 2025, *Ocean Capital LLC's Reply in Further Support of Motion to Award Attorneys' Fees and Costs* was filed. (Docket No. 273). Therein, they reiterate that "[w]ithout Ocean Capital's efforts, Fund stockholders would have their fundamental right to vote repeatedly rendered meaningless and would still be represented by legacy directors who squatted in their positions for years against the will of stockholders." (Id. at 6). Additionally, they posit that there is no basis to assert that Ocean Capital is not entitled to fees just because the two of the Funds were not formally named in their Section 3655 counterclaim, because those parties participated fully in the lawsuit, including the securities claims that the counterclaims were "contingent"

upon, and their stockholders secured the full benefit of Ocean Capital's efforts. (Id. at 7-8).

Furthermore, Ocean Capital argues that this Court can apply the corporate benefit doctrine. According to Ocean Capital, they are not making a fee-shifting request, as they seek "a fee award as (partial) reimbursement — not compensation — for its efforts to secure benefits for the Funds and their stockholders". (Id. at 8).

Finally, Ocean Capital asserts that its fee request is reasonable because the litigation conferred substantial benefits to stockholders. (Id. at 9). They also posit that the lawsuit was complex as it concerned claims under Sections 13(d), 14(a), and 20(a) of the Exchange Act asserted by nine Plaintiff funds against 23 Defendants, plus Ocean Capital's counterclaims for injunctive relief under Section 3655. (Id. at 11). It also took 3.5 years to litigate these purportedly simple claims to final mandate and the Funds even represented to the Court in a previous filing at Docket No. 202 that the case raised "serious and difficult questions of law in an area where the law is somewhat unclear." (Id.). Moreover, Ocean Capital argues that although the case did not reach discovery it required 5,150 hours of work because of the claims and amended claims asserted and challenged by both sides which required extensive briefing. (Id. at 12). Additionally, Ocean Capital claims that it is prepared to produce its billing records for this Court's in camera review upon the Court's request. (Id. at 13).

Civil No. 22-1101 (GMM)
Page - 13 -

On November 12, 2025, the Funds filed a *Sur-Reply to Ocean Capital's Reply to Fund's: "Opposition to Ocean Capital LLC's Motion to Award Attorneys' Fees and Costs (ECF No. 252 and 263)" (ECF No. 273)*. (Docket No. 279). The Funds argue that Ocean Capital's 384-page reply included new exhibits and a supplemental declaration, "introducing — for the first time — a series of new legal arguments, new evidentiary materials, and multiple authorities not previously cited." (Id. at 2) (emphasis omitted). Specifically, they challenge Ocean Capital's characterization of its request as "partial reimbursement" instead of fee shifting. Accordingly, the Funds submit that the new legal arguments and factual assertions improperly raised in Ocean Capital's reply should be deemed waived. (Id. at 3-4). The Funds argue that even assuming the Court were to entertain Ocean Capital's new arguments, their fee request still fails as a matter of law. (Id. at 4). Specifically, they posit that the corporate benefits doctrine is clearly a fee-shifting doctrine which allows "recovery only when a plaintiff's affirmative litigation efforts have conferred a measurable benefit upon the corporation or its shareholders" and cannot be labeled as reimbursement as Ocean Capital does. (Id. at 5) (emphasis omitted). Furthermore, they argue that Ocean Capital's fee request "fails the third Sugarland factor: that the resulting benefit must be causally related to the lawsuit," because the "validation of the elections flowed from the dismissal of the

Funds' federal claims, not from Ocean Capital's counterclaim." (Id. at 6). Also, the Funds contend that Ocean Capital cannot satisfy Sugarland's causation requirement. (Id. at 7). In addition, the Funds submit that having failed to substantiate its hourly rates or provide any competent evidence of prevailing market conditions, Ocean Capital now attempts make its invoices available for in camera review, which according to them is not supported by the cited caselaw. (Id. at 8). The Funds posits that without the invoices, neither the Funds nor the Court can meaningfully evaluate the reasonableness of the fees claimed and that this deficiency warrants denial of the request for attorneys' fees. (Id. at 9).

On November 13, 2025, Ocean Capital filed *Ocean Capital LLC's Notice of Supplemental Evidence in Support of Motion to Award Attorneys' Fees and Costs*. (Docket No. 281). To support its averment that the requested fee award is reasonable, Ocean Capital asserts that once its nominees were seated as directors, the newly reconstituted Boards acted diligently to explore a variety of options to return fair market value to stockholders and made various proposals that have resulted in significant monetary benefits to stockholders. (Id. at 3).

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure provide that a motion moving for attorney's fees must: (i) be filed no later than 14 days after the entry of judgment; (ii) specify the judgment and the statute, rule, or other grounds entitling the movant to the award; (iii) state the amount sought or provide a fair estimate of it; and (iv) disclose, if the court so orders, the terms of any agreement about fees for the services for which the claim is made. Fed. R. Civ. P. 54(d)(2)(B)(i)-(iv).

Under the American Rule, each party ordinarily bears its own attorneys' fees absent statutory or contractual authorization. Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 247 (1975). Statutory or contractual authorization is not applicable here. The action that gives rise to the *Motion for Attorneys' Fees* is not grounded in the Securities Exchange Act or any other federal statute. It is grounded in state law counterclaims filed under supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a). *See* (Docket No. 121 at 39). Those state law claims were brought pursuant to the Puerto Rico General Corporations Law.

Where state law supplies the basis of the decision — either in diversity or supplemental jurisdiction — "the applicable standard of law for the determination of attorney's fees is state law." Flovac, Inc. v. Airvac, Inc., No. CV 12-1348 (SEC), 2017 WL 1194203, at *1 (D.P.R. Mar. 30, 2017); Rodríguez-López v.

Institución Perpetuo Socorro, Inc., 616 F. Supp. 2d 200, 202 (D.P.R. 2009). Accordingly, state law governs the issue of counsel fee availability here.

In Puerto Rico, Rule 44.1(d) of the Puerto Rico Rules of Civil Procedure governs the imposition of attorneys' fees. P.R. Laws Ann. tit. 32, App. III, Rule 44.1(d); *see also* IOM Corp. v. Brown Forman Corp., 627 F.3d 440, 451 (1st Cir. 2010). Rule 44.1(d) permits attorneys' fees only where a "party or its lawyer has acted obstinately or frivolously."

In conducting this analysis, courts have "considerable discretion in determining the amount of attorneys' fees to be bestowed." Rivera v. LifeLink Found., Inc., 255 F. Supp. 3d 327, 333 (D.P.R. 2017).[3]

### III. APPLICABLE LAW AND ANALYSIS

A. <u>Ocean Capital has failed to establish its entitlement to attorneys' fees under Rule 44.1(d).</u>

Under Puerto Rico law, attorneys' fees are not meant to compensate a litigant for the total costs incurred in litigation. Id. Since Ocean Capital's *Motion for Attorneys' Fees* is based on

---

[3] Because the issue presented concerns the legal availability of attorneys' fees under Puerto Rico law, the Court's determination rests solely on a question of law rather than a discretionary assessment of obstinacy.

the litigation surrounding its counterclaims under Section 3655, Puerto Rico law governs.

A review of the Puerto Rico General Corporations Law confirms that neither Section 3655 nor any other provision contains a fee-shifting clause.

Ocean Capital does not invoke Rule 44.1(d), nor does it base its request on allegations of frivolousness or obstinacy. In the absence of a statutory fee-shifting provision and absent a finding of obstinacy, Puerto Rico law does not authorize an award of attorneys' fees. *See* IOM Corp., 627 F.3d at 451–52.

In addition to its main fee-shifting argument, Ocean Capital later characterized its request as "partial reimbursement". That distinction does not alter the analysis. Under Puerto Rico law, any court-ordered transfer of litigation expenses from one party to another constitutes an award of attorneys' fees subject to Rule 44.1(d), unless expressly authorized by statute. The label attached to the request cannot circumvent the substantive limitations imposed by Puerto Rico law.

Thus, based on the governing statutory framework, the Court **DENIES** the *Motion for Attorneys' Fees*.

B. The corporate benefit doctrine

Ocean Capital alternatively urges the Court to apply Delaware's corporate benefit doctrine. Even assuming the doctrine

Civil No. 22-1101 (GMM)
Page – 18 –

applies under Delaware law, Puerto Rico has not adopted such an equitable exception to the American Rule. Rule 44.1(d) governs fee awards absent specific statutory authorization. To recognize an additional equitable basis for fee shifting would expand substantive state law beyond what Puerto Rico courts have authorized.[4]

Even assuming arguendo that Delaware's corporate benefit doctrine were applicable, Ocean Capital would still bear the burden of demonstrating that the alleged corporate benefits were causally related to its affirmative litigation efforts, rather than to the dismissal of the federal securities claims or the appellate mandate. On the present record, the Court need not and does not resolve that question, because the threshold issue of entitlement under Puerto Rico law is dispositive.

Thus, the Court declines to apply the corporate benefit doctrine.

---

[4] The Court does not suggest that Puerto Rico could never recognize an equitable corporate-benefit theory. The question is whether a federal court may create or extend such a doctrine in the absence of controlling authority from the Puerto Rico Supreme Court. Puerto Rico has adopted a specific statutory framework governing attorneys' fees and has conditioned recovery on a finding of frivolousness or obstinacy. Accordingly, it would be inappropriate for this Court to expand the substantive availability of fee awards beyond those limits. *See* Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938).

C.   Reasonability of Attorneys' Fees

Irrespective of the applicability of the corporate benefit doctrine or any other theory, Ocean Capital bears the burden of establishing the reasonableness of the fees sought. *See* <u>Liberty Mut. Ins. Co. v. Cont'l Cas. Co.</u>, 771 F.2d 579, 582 (1st Cir. 1985).

Here, Ocean Capital requests $5,790,575.00 for legal services rendered by Vinson & Elkins, LLP and Vicente Law Office LLC, and provides aggregate hours and totals. However, even if fees were otherwise available, Ocean Capital has not provided contemporaneous billing records, detailed time entries, or evidence of prevailing market rates sufficient to permit meaningful review.[5] A fee applicant bears the burden of documenting the hours expended and rates claimed. *See* <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433 (1983). On this record, the Court could not determine reasonableness.

The Court has also reviewed Ocean Capital's *Notice of Supplemental Evidence* (Docket No. 281). Even accepting those representations regarding post-seating financial actions by the

---

[5] Ocean Capital attempts to excuse its failure to submit documentation supporting its request for attorneys' fees by asserting that billing records are available for in camera review. However, Ocean Capital has not articulated a basis warranting in camera review in the first instance. Moreover, the out-of-district authorities it cites do not support the proposition advanced. In those cases, in camera review was conducted to examine redacted billing entries that had already been submitted in connection with a fee application. Here, by contrast, no supporting documentation has been filed.

reconstituted boards, the availability of attorneys' fees turns on entitlement under governing law, not on the magnitude of any asserted post-judgment benefits. On this record, the Court could not determine reasonableness.[6] Thus, the Court, need not go any further in its analysis.

## IV. CONCLUSION

For the foregoing reasons, the *Motion for Attorneys' Fees* is **DENIED**.

IT IS SO ORDERED.

In San Juan, Puerto Rico, on February 20, 2026.

/s/ Gina R. Méndez-Miró
GINA R. MÉNDEZ-MIRÓ
UNITED STATES DISTRICT JUDGE

---

[6] Significantly, Ocean Capital counsel did not assume legal representation in this action on a contingent basis, (Docket No. 252 at 19), which also weighs against granting the requested fees.